## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| **VICTORY PARENT COMPANY, LLC,** | § | |
| **AND VICTORY MEDICAL CENTER** | § | |
| **LANDMARK, LP,** | § | |
| *PLAINTIFFS* | § | **CIVIL ACTION NUMBER** |
| | § | |
| | § | |
| **VS.** | § | _____ |
| | § | |
| **KICKAPOO TRADITIONAL TRIBE OF** | § | |
| **TEXAS, KICKAPOO TRADITIONAL** | § | |
| **TRIBE OF TEXAS GROUP HEALTH PLAN,** | § | |
| **LUCIO GARCIA-ZUAZUA, AND** | § | |
| **ROBERTO L. RODRIGUEZ,** | § | |
| *DEFENDANTS* | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, VICTORY PARENT COMPANY, LLC and VICTORY MEDICAL CENTER LANDMARK, LP (hereinafter, "Plaintiffs"), file this Original Complaint against the Defendants, KICKAPOO TRADITIONAL TRIBE OF TEXAS GROUP HEALTH PLAN, KICKAPOO TRADITIONAL TRIBE OF TEXAS, LUCIO GARCIA-ZUAZUA, and ROBERTO L. RODRIGUEZ, (hereinafter, "Defendants"), and would show unto the Court the following:

### I. PARTIES

1.      Plaintiff, VICTORY PARENT COMPANY, LLC, is a Texas limited liability company that formerly operated and/or owned a majority interest in various hospitals in Texas, including the hospital facility located at 5330 N. Loop 1604W, in San Antonio, Bexar County, Texas 78249. Plaintiff is headquartered in the city of The Woodlands, Harris County, Texas. Plaintiff is a lawful Assignee and Claimant of the claims asserted herein.

2.      Plaintiff, VICTORY MEDICAL CENTER LANDMARK, LP, is a Texas limited partnership that formerly operated a hospital located at 5330 N. Loop 1604W, in San Antonio, Bexar County, Texas  78249, where this Plaintiff was headquartered.  Plaintiff is a lawful Assignee and Claimant of the claims asserted herein.

3.      Plaintiff, VICTORY PARENT COMPANY, LLC, is a majority owner of Plaintiff, VICTORY MEDICAL CENTER LANDMARK, LLC, (hereinafter, "Plaintiffs").

4.      Defendant, KICKAPOO TRADITIONAL TRIBE OF TEXAS, (hereinafter, "Plan Sponsor") is a Federally Recognized Indian Tribe that operates a casino at the Kickapoo Lucky Eagle Casino Hotel in Eagle Pass, Texas.  The Plan Sponsor has employees residing in the State of Texas.  Plan Sponsor is headquartered in Eagle Pass, in Maverick County, Texas.  Personal service on the Defendant Plan Sponsor may be perfected by serving its Tribal Administrator, Don Spaulding, at 2212 Rosita Valley Road, Eagle Pass, TX  78852, or anywhere in the state of Texas where Mr. Spaulding may be located.

5.      During all material times, KICKAPOO TRADITIONAL TRIBE OF TEXAS, acted as the Plan Sponsor and Plan Administrator for the Defendant, KICKAPOO TRADITIONAL TRIBE OF TEXAS GROUP HEALTH PLAN (hereinafter, the "Plan"). KICKAPOO TRADITIONAL TRIBE OF TEXAS appointed two people to serve as its official Plan Administrators:  LUCIO GARCIA-ZUAZUA and ROBERTO L. RODRIGUEZ.  Personal service on the Defendant Plan may be perfected by serving one of its Plan Administrators, LUCIO GARCIA-ZUAZUA, at 2212 Rosita Valley Road, Eagle Pass, TX  78852, or anywhere in the state of Texas where MR. GARCIA-ZUAZUA  may be located.

6.      The Plan Sponsor appointed LUCIO GARCIA-ZUAZUA, (hereinafter, "MR. GARCIA-ZUAZUA), as one of its official Plan Administrators.  MR. GARCIA-ZUAZUA is the

person named as the Plan Administrator for the Plan on the Defendants' 2013 Form 5500, which form was executed by MR. GARCIA-ZUAZUA.  Personal service on MR. GARCIA-ZUAZUA may be perfected by serving him at 2212 Rosita Valley Road, Eagle Pass, TX  78852, or anywhere in the state of Texas where MR. GARCIA-ZUAZUA  may be located.

7.     The Plan Sponsor also appointed its General Counsel, ROBERTO L. RODRIGUEZ, (hereinafter, "MR. RODRIGUEZ") as one of its official Plan Administrators. Evidence of MR. RODRIGUEZ'S appointment as Plan Administrator is the fact that he performed the duties of a Plan Administrator.  MR. RODRIGUEZ made decisions on behalf of the Plan, such as whether to produce governing documents upon request to the Plaintiffs.  MR. RODRIGUEZ also informed the Plaintiffs to cease communications with other representatives of the Plan and to direct all communications to him.  It is clear that MR. RODRIGUEZ is acting as a Plan Administrator on behalf of the Plan Sponsor and the Plan; hence, MR. RODRIGUEZ is deemed a fiduciary under the ERISA statute with all of the rights, duties, and obligations of a Plan Administrator pursuant to the applicable law. Personal service on MR. RODRIGUEZ may be perfected by serving him at at 2212 Rosita Valley Road, Eagle Pass, TX  78852, or anywhere in the state of Texas where MR. RODRIGUEZ may be located.

8.     The Plan is a self-insured, contributory defined benefit plan, which is subject to the provisions of the Employee Retirement Income Security Act of 1974.

## II. JURISDICTION AND VENUE

9.     Plaintiffs' claims arise *in part* under 29 U.S.C. §§ 1001 *et seq.*, Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA").  Plaintiffs assert Subject Matter Jurisdiction under 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 29 U.S.C. § 1132(e).

10.     Venue is appropriate in this District under 28 U.S.C. § 1391(b) because Plan Sponsor conducts a substantial amount of business in this District, and employs and provides benefits to residents of this district. Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this district, such as: the collection and contributions of premiums for the Plan, the making of promises and representations as to covered medical benefits to Plan Beneficiaries (who also work and reside in this district), the provision of health care services to Plan Beneficiaries, the making of promises and representations as to insurance coverage for those health care services, the filing of claims and appeals to the Plan, the exchange of correspondence relating to those claims appeals, and the decision making by fiduciaries of the Plan relating to the issuance of benefits and protection of Plan funds.

### III.  **INTRODUCTION**

11.     Plaintiffs assert their claims sounding in ERISA.

12.     This dispute arises out of Defendants' elaborate scheme to conceal, conspire, collude, and defraud the Plaintiffs in the Defendants' ultimate objective to wrongfully withhold over $2,000,000 in benefits from the Plaintiffs.   The Defendants' acts and omissions are tantamount to a complete disregard for the Defendants' fiduciary duties as mandated under ERISA and the federal and state regulations promulgated thereunder (collectively hereinafter, "ERISA").  As delineated below, Defendants' course of conduct with the Plaintiffs demonstrates an intentional bad faith, which conduct has resulted in devastating injuries to the Plaintiffs.

4

13.     According to *Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452, 480 (7th Cir. 2010)("Kenseth I"), a Plan Administrator as a fiduciary owes a duty to administer the plan solely in the interest of the beneficiary or the beneficiary's designee, and ***not in its own interest.*** However, Defendants have demonstrably administered the Plan in their own self interests. To illustrate, prior to the Plaintiff, VICTORY MEDICAL CENTER LANDMARK, LP, (hereinafter, "VMCL"), providing healthcare services to the patient the subject of this ERISA claim, Plaintiff VMCL obtained from the Defendants:  (i) verification of insurance benefits; (ii) confirmation of no applicable exclusions to benefits under the Plan and (iii) precertification of medical necessity of the healthcare treatment.  After providing said services and submitting its claim for benefits in the sum of $2,113,995.15, Defendants denied Plaintiffs' claims *in totum* on the basis of no medical necessity.  As the Plaintiffs' appealed the adverse benefit determination, approximately **two (2) years later** the Defendants for the very first time informed the Plaintiffs that its claims were denied due to exclusions in the Plan.  To illustrate, Braden W. Brown is the attorney for co-fiduciaries of the defendants: HealthSmart Benefit Solutions, Inc. (hereainfter, "HealthSmart"), the third-party administrator of the Plan; and   HealthSmart Care Management Solutions, LP (hereinafter, "HSCMS"), the claims administrator of the Plan.  On March 11, 2016, Mr. Brown in his response to the Texas Department of Insurance stated that preapproved services, which constituted the majority of the services, were considered medically necessary and that those services were ***"properly paid by the Plan."***  Mr. Brown continued to state that the reason for  the denial of benefits of the other portion of services was the fact that there were two (2) exclusions in the Plan that prevented the Plan Administrator from making a full payment of the total claim. A true and correct copy of the Defendants' letter to the Texas Department of Insurance dated March 11, 2016, is attached hereto, identified as *Exhibit A*, and is incorporated herein by

reference for all purposes.   This written representation by the Defendants' co-fiduciaries is outrageous for three (3) reasons:

1.   It is a lie.  The Defendants are telling the Texas Department of Insurance that the majority of the Plaintiffs' claims were "properly paid by the Plan." This is an objectively false statement.  Plaintiffs have not received a penny on their $2,113,995.15 claim.

(*See Exhibit A,* page 2, second complete paragraph, lines 5-6).

2.   Defendants' informed the Plaintiffs in August 2013 that there were no exclusions applicable to the benefits.  When the Defendants made their adverse benefit determination, they did not cite any exclusion as its basis. Then, almost two (2) years after precertification, the Defendants for the first time cite these two (2) "new" exclusions.

3.   The Plan Administrator, who is General Counsel for the Plan Sponor and a fiduciary under the Plan, has blatantly refused to provide a copy of the original Master Plan upon request by the Plaintiffs.

14.   The Plaintiffs contend that the original Master Plan (or the 2012 Master Plan) was in effect at the time that the Plaintiff VMCL rendered its services to the patient the subject of this ERISA claim.  As the claim administrator of the Plan, HealthSmart Care Management Solutions, LP, verified to the Plaintiffs on or about August 19, 2013, there were no exclusions applicable to the Plaintiffs' benefits under the Plan.  When the Plaintiffs requested the Plan Administrator, ROBERTO L. RODRIGUEZ (hereinafter, "MR. RODRIGUEZ"), to provide a complete and duly executed copy of the Master Plan as he is mandated to do under 29 U.S.C. § 1166, incredulously MR. RODRIGUEZ patently refused *in writing*.  Attached hereto and identified as *Exhibit B* is a true and correct copy of a letter from Mr. Rodriguez dated June 21, 2016, which is incorporated herein for all purposes. In the last paragraph of *Exhibit B,* Mr. Rodriguez states the following:

6

"The Plan Document was amended and restated in its entirety on 2/1/13 (see attached). The version that existed before 2/1/13 is not relevant since the 2/1/13 Plan controls. Hence, we are not sending the 2012 Masterplan document."

Pursuant to 29 U.S.C. § 1166, the Plan Administrator has no discretion in deciding whether or not to produce the governing plan documents; he must produce the document within thirty (30) days after the date of the request. The only time that a Plan Administrator may use his discretion to determine "relevancy," for a production request is when documents were "submitted, considered, or generated in the course of making the benefit determination, . . ." etc., as set forth in 29 C.F.R. § 2560.503-1(m)(8). As the Plan Administrator and as an attorney, there can be no doubt that MR. RODRIGUEZ is fully aware of his fiduciary and legal obligations to promptly produce a true, correct, and complete copy of the original Master Plan.

15.    MR. RODRIGUEZ'S refusal to produce the original Master Plan is not the first time that the Defendants have breached their fiduciary duty to disclose upon request its governing documents to the Plaintiffs. Defendants have systematically refused to produce *any* of their governing document as mandated by the ERISA statute until Defendants were compelled to do so when Defendants responded to the Plaintiff's complaint filed with the Texas Department of Insurance. When Defendants did finally produce said document, Defendants submitted an unsigned, undated, unwitnessed draft version of the Master Plan Document. Again, when the Plaintiffs requested a complete, executed, official copy of the  Master Plan Document, Defendants provided an unofficial, undated copy signed by the Indian Tribal Administrator, not the Plan Administrator, which contained no witness signature(s). The ERISA statute mandates that a fiduciary maintain and produce upon request accurate, complete, duly executed, final authoritative plan documents. This mandate has consistently been violated by the Defendants for

years.   As of the date of the filing of this Complaint, the Defendants continue to conspire together to conceal from the Plaintiffs a true, correct, and complete copy of its original Master Plan.  Plaintiffs contend that the original Master Plan contains no exclusion that would justify the Defendants' adverse benefit determination.   Defendants' concealment of said Plan is part of its scheme to defraud the Plaintiffs and to administer the Plan for the use and benefit of the Defendants.

16.    The Defendants' course of conduct in refusing to produce its governing documents; MR. RODRIGUEZ'S refusal to produce the original Master Plan (or "Plan"); and Mr. Brown's lie about paying the Plaintiffs are all factual demonstrations of the orchestrated efforts of the Defendants and their co-fiduciaries to conceal, conspire, collude, and defraud the Plaintiffs out of the Plaintiffs' rightful claim to receive benefits from the Plan in the sum of $2,113,995.15.

17. The Defendants' bad faith in dealing with the Plaintiffs is undeniable.   Another example can be seen when the Defendants deemed all of the physician charges as "medically necessary" and "not experimental or investigative," as Defendants promptly paid the physicians, . . . while refusing to pay the Plaintiff VMCL due to "no medical necessity" and part of the treatment was "experimental or investigative." Furthermore, *in arguendo,* even if part of the services rendered at the Plaintiff's facility was deemed "experimental or investigative," why haven't the Defendants paid the Plaintiffs' for large part of the claim that was **not** deemed "experimental or investigative"?  All of these examples constitute breaches of the Defendants' fiduciary duties to the Plaintiffs in contravention of the ERISA mandates.

18.     The Defendants further breached its fiduciary duty under the ERISA statute by conspiring together to fabricate a reason to conduct medical review for the improper purpose of justifying an adverse benefit determination.  To illustrate, the Defendants had their co-fiduciary, HSCMS, who had precertified the Plaintiffs' services and verified no exclusions to benefits, create a reason to refer the claim to a subordinate of HSCMS, AllMed Healthcare Management, Inc. (hereinafter, "Allmed.  Allmed  is not licensed as a Utilization Review Agency by the Texas Department of Insurance, which the Defendants have acknowledged. Not surprisingly, Allmed issued a medical review finding that a  portion of the services contained in Plaintiffs' claim was deemed "experimental or investigational," which is a basis for denial of the claim.  Plaintiffs contend that Allmed's medical review was invalid, illegal, and conducted in bad faith, as the Plaintiffs will delineate below.

19.     The Plaintiffs further contend that the Defendants violated the statutory mandates under ERISA by failing to disclose exclusionary language prior to the Defendant's verifying coverage and certifying medical necessity for a plan beneficiary in the Plaintiffs' facility. Pursuant to *Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452 (7th Cir. 2010)("Kenseth I"), the court found that a fiduciary is obligated to disclose "material information and has a duty *not* to mislead a plan participant."  610 F.3d at 466.  The court further held that an insurer has an "*affirmative obligation to provide accurate and complete information when a beneficiary inquiries about her insurance coverage.*" Id at 468. The Defendants have **blatantly** breached its duties to disclose as required under the *Kenseth* case.  Literally, the Defendants did not disclose the alleged exclusionary language upon which Defendants base their denial of medical benefits under the Plan until approximately *two (2) years after precertification of the medical benefits.* Only after Plaintiffs engaged in appeals for approximately two (2) years did the Defendants, for

the first time, disclose the following exclusions to Plaintiffs: (i) the Plan allegedly excluded medical benefits for any medical treatment that Defendants contend is experimental or investigational; and (ii) the Plan allegedly denied medical benefits for hospitals like the Plaintiff, which is a non-Medicare participating hospital. In evidence of these exclusions that Defendants allege were in effect at the time of precertification, Defendants produced several pages of "exclusions" for a "Plan" that is not named or identified in any way. Plaintiffs contend that these exclusions were not in effect at the time of precertification, and Defendants are fraudulently attempting to deny medical benefits under the Plan by retroactively attempting to enforce "new" exclusions. In addition, even if these two exclusions were in effect approximately two years prior to the disclosure by Defendants, Plaintiffs contend that Defendants' failure to disclose the exclusionary language prior to the Plan Beneficiary receiving medical care is a further blatant violation of the Defendants' fiduciary duty under the ERISA statute. Defendants have an affirmative duty to disclose information relevant to Plan Beneficiary's rights; therefore, *if* the exclusions did exist prior to precertification, Defendants' have breached their fiduciary duty by not timely disclosing same.

## IV. **FACTUAL ALLEGATIONS**

### A. *Background as to Self-Insured Health Plans Governed by ERISA and OON Providers*

20.     Generally speaking, throughout America, individuals not eligible for Medicare of Medicaid typically obtain health insurance coverage through his or her own employer, or through a family member's employer. Those employers can provide health insurance on either a fully-insured or self-insured basis. When an employer provides fully-insured health insurance, the employer and/or employees pay premiums to a third party commercial insurance company, and the medical costs of the employees are paid using the insurance company's funds.

*Fully-Insured Plans*

- *Risk*: In a fully-insured plan, the employer pays a per-employee premium to an insurance company, and the insurance company assumes the risk of providing health coverage for insured events.

- *Plan Characteristics*: In fully-insured arrangements, premiums vary across employers based on employer size, employee population characteristics, and health care use. Premiums can also change over time within the same employer because of changes in the demographics of the employed group. However, employers are charged the same premium for each employee.

- *Employer Size*: Small employers that offer health benefits are typically fully insured. In 2008, 88 percent of workers in firms with 3-199 employees were in fully-insured plans. Smaller firms are typically located in one office or region (if they are on the large side of small).

- *Market Share*: Overall, 45 percent of workers with health insurance were covered by a fully-insured plan in 2008.

21.     By contrast, when health insurance is offered by an employer on a self-insured basis, the employer assumes the risk for payment of the medical claims by sponsoring a benefits plan that forms a specific fund for that purpose. The resulting fund enjoys certain tax breaks, and is funded by the employer and/or employees who contribute premium payments. The health care claims of the enrolled employees and their dependents are then paid with the finances of the fund.

*Self-Insured Plans*

- *Risk*: In a self-insured plan, instead of purchasing health insurance from an insurance company and paying the insurer a per-employee premium, *the employer acts as its own insurer*. In the simplest form, the employer uses the money that it would have paid to the insurance company and instead directly pays health care claims to providers. *Self-insured plans often contract with an insurance company or other third party to administer the plan, but the employer bears the risk associated with offering health benefits.*

- ***Plan Characteristics***: Large employers often offer multiple self-insured health plans to different classes of workers. Benefits may vary for management and labor, and benefits may vary by occupation or even hours of work. Even when an employer offers a uniform benefits program across all locations and geographic regions, the cost of providing the program - commonly known as the premium equivalent - will vary because the cost of health care services is not uniform across the United States.

- ***Employer Size***: In 2008, 89 percent of workers employed in firms with 5,000 or more employees were in self-insured plans.

- ***Market Share***: Overall, 55 percent of workers with health insurance were covered by a self-insured plan in 2008.

22.     Unless exempted, self-insured health benefit plans are governed and regulated by the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"). Pursuant to ERISA, a self-insured health benefit plan must set forth in a written official plan document or plan instrument specific details, such as the terms of eligibility for enrollees, the benefits covered, and more.

23.     Often times, an employer (*i.e.* Plan Sponsor) who elects to have a self-insured health plan contracts with a third party commercial insurance company to oversee the claims processing and other administrative services. The employer and the third party commercial insurance company, also known as the Third Party Administrator (hereinafter, "TPA"), enter into an Administrative Services Only ("ASO)" contract or agreement.

24.     Blue Cross Blue Shield of Illinois (hereinafter, "BCBS") is a third party commercial insurance company that provides TPA services to many self-insured plans under ASO contracts. In many cases, in exchange for the payment of fees, BCBS provides claims processing and other administrative services to the plans, in addition to proving Plan Beneficiaries access to BCBS's network of providers. BCBS's network of providers are

considered in-network because they enter into Preferred Provider Organization (hereinafter, "PPO") contracts with BCBS. However, in the case at bar, BCBS solely provides administrative claims payment services and does not make the determination of precertification by determining whether a medical claim is "medically necessary" in order to precertify the claim or in order to pay the claim. In the case at bar, HealthSmart Benefits Solutions, Inc., (hereinafter, "HealthSmart"), is a third-party Plan Administrator (hereinafter, "TPA"), and its affiliate, HealthSmart Care Management Services, LP, (hereinafter, "HSCMS"), is the claim administrator. The Plan is administered by its Plan Administrators, to-wit: MR. GARCIA-ZUAZUA and MR. RODRIQUEZ.

25.    In accordance with PPO contracts between BCBS and its in-network providers, BCBS's in-network providers agree to accept negotiated lower amounts for their services. In-network providers agree to the lower rated in exchange for a higher volume of patients that results from being part of BCBS's published managed care network. Thus, when a plan beneficiary receives health care services from an in-network provider, a plan is only obligated to pay the in-network provider the negotiated amount set by the PPO contract. Pursuant to the PPO contract between the in-network provider and BCBS, the in-network provider agrees to accept the lower negotiated rate as payment in full for the service. Additionally, the in-network provider agrees to have no recourse against the patient for any difference in amount between the provider's normal charge for the procedure and the negotiated lower rate. In other words, by contract, the in-network provider is precluded from ever balance-billing the patient.

26.    Since the amount owed by the Plan to the in-network provider is already determined by the pre-negotiated fee rates set by the PPO contract with BCBS, and because the PPO contract also precludes the in-network provider from ever balance-billing the patient, the in-network

provider's request for payment from the Plan is deemed to be governed by the PPO contract, and is therefore not considered an ERISA claim for benefits.

27.     By contrast, an out-of-network (hereinafter, "OON") provider has no contracts with either BCBS or the Plan, and is not bound to accept the same lower negotiated rates set forth by any PPO contract or fee schedule. Since there is no contract between an OON provider and BCBS or the Plan, an OON provider is free to "balance-bill" the patient for any amounts unpaid by the Plan. In other words, that the patient may be pursued and held personally liable by an OON provider for any amounts unpaid by the Plan.

28.     Plaintiff, VICTORY MEDICAL CENTER LANDMARK, LP, (hereinafter, "VMCL"), is an OON provider that has no contracts with either BCBS or the Plan. As an OON provider, VMCL is not subject to any limitations or agreements contained in any BCBS PPO contracts.

29.     Plan Sponsor is an employer that sponsors and administers the Plan, an ERISA governed, self-insured welfare benefit plan created to provide benefits to subscribed Plan Sponsor employees and the employees' enrolled dependents (hereinafter, collectively "Plan Beneficiaries").

30.     Under the terms of the Plan, the Plan is required to promptly pay benefits for OON services based on the usual, customary and reasonably rate ("UCR") for that service in the same geographic area. Wherever the Plan pays less than one hundred percent (100%) of an OON provider's claim, the Plan's failure or refusal to pay the full amount of the OON provider's charges are deemed an Adverse Benefit Determination under ERISA.

**B. _Plaintiffs' Precertified Benefits have been Wrongfully Denied for the Benefit of the Defendants_**

31.     Patient RS is the Plan Beneficiary (*i.e.* covered individual) under the terms and conditions of the Plan, and is entitled to medical benefits *as determined by the Plan*. That is, if the Defendants make the determination that the services Patient RS receives are indeed covered services under the Plan, and the covered services are deemed medically necessary, then the Defendants, through BCBS, shall make a determination as to how much to pay VMCL for providing services to Patient RS.

*i.*     **_Background Information for Patient RS' claim_**

32.     Before providing healthcare services to Patient RS, VMCL on August 19, 2013, VMCL verified through HSCMS that Patient RS is a Plan Beneficiary of the Plan sponsored by Defendants, and, as a benefit under the Plan, Patient RS does indeed have OON benefits. This pre-service verification procedure is not only common practice amongst most healthcare providers, but is much more imperative as VMCL is an OON provider and must ensure that each patient has OON benefits prior to performing any service. Before receiving services from VMCL, Patient RS executed an *Irrevocable Assignment and Transfer of Causes of Action and Claims* form (hereinafter, "Assignment of Benefits") on September 13, 2013, which designated and assigned the Plaintiffs to be a statutorily defined "Claimant" by assigning the Plaintiffs rights to receive benefit payments directly, conduct administrative appeals, and also seek judicial review for benefit claims, breaches of fiduciary duty, statutory penalties for failure to provide Plan Documents, and any equitable remedies under the law (the Legal Assignment of Benefits and Plaintiffs' standing is discussed hereafter).

33.     VMCL obtained precertification for Patient RS to undergo lumbar anterior procedures and lumber posterior procedures with fourteen (14) inpatient days at VMCL's hospital, which was deemed "medically necessary" by HSCMS, who issued its precertification for said treatment under precertification number 10055379.

34.     After receiving verification of Patient RS's OON benefits from HSCMS and after Patient RS assigned the Plaintiffs as her Claimant, VMCL provided healthcare services to Patient RS, and Patient RS incurred eligible and reasonable medical expenses from August 26, 2013, through September 9, 2013.   Being that Patient RS incurred eligible and reasonable expenses, VMCL submitted healthcare claims to Defendants determination and to be reimbursed for the services VMCL provided to Patient RS.

### ii.     *Defendants Violated the ERISA Claims Procedure*

35.     Pursuant to the ERISA Claims Procedure, the Defendants are required to comply with specific notice procedures when processing claims for healthcare benefits.   The term "adverse benefit determination," as defined in the ERISA Claims Procedure, includes "a denial, reduction, or termination of" benefits and the "failure to provide or make payment (in whole or in part) for" a benefit.   29 C.F.R. § 2560.503-1(m)(4).   An EOB, for example, is required to contain the following information pursuant to the ERISA Claims Procedure:

(i)     set forth the specific reason or reasons for the refusal to pay the covered benefits, 29 C.F.R. § 2560.503-1(g)(1)(i);

(ii)     identify the "plan provision" that supported its refusal to actually pay the covered benefits, 29 C.F.R. § 2560.503-1(g)(1)(ii);

(iii)     describe any additional material or information necessary for the recipient to receive the benefit, 29 C.F.R. § 2560.503-1(g)(1)(iii);

(iv)    describe the applicable plan review procedures and time limits applicable thereto, 29 C.F.R. § 2560.503-1(g)(1)(iv);

(v)    advise the recipient of the right to bring a civil action under section 502(a) of ERISA following the adverse benefit determination on review, 29 C.F.R. § 2560.503-1(g)(1)(v);

(vi)    identify the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request, 29 C.F.R. § 2560.503-1(g)(1)(v)(A); and

(vii)    provide all of the information regarding recipient's rights of appeal as set forth in the ERISA statute, 29 C.F.R. § 2560.503-1(h).

As Plaintiffs shall delineate below, the EOBs sent to Plaintiffs by the Defendants violated virtually every one of the above-referenced requirements under the ERISA Claims Procedure.

36.    On or about December 9, 2013, the Plaintiffs received Explanation of Benefits (hereinafter, "EOB") denying *in totum* the submitted healthcare claims regarding Patient RS. The EOB referenced denial code "924" as the reason for the denial of medical benefits.  Code 924 means "denied cause no medical necessity" was found to support the healthcare claim.  In contrast with the illegal, invalid EOB,  medical necessity did, in fact, exist as HSCMS determined in its preapproval certification.  It was only after the Defendants conspired together to wrongfully and willfully withhold the Plan assets from the Plaintiffs that the Defendants manufactured this invalid denial of benefits in breach of the Defendants' fiduciary duties under the ERISA Claims Procedure.

37.    On or about January 21, 2014, the Plaintiffs received an EOB that again denied all of the submitted healthcare claims regarding Patient RS.  This EOB referenced denial code "99" which stated the following:

> "*You are entitled to a review of the benefit determination if you have a question or do not agree.  To obtain a review submit your request in writing to the office to which you submitted your initial request for benefits.  Your request should include*

*your name, Enrollee ID and other identifying information shown above the issues and any data documents and comments you would like to have considered. Written request for review must be mailed or delivered within the time limit required by your Plan.   Please consult your Plan Documents for more information about claim review procedures.   If a claim is denied or partially denied because of lack of medical necessity or an experimental treatment exclusion, internal rules guidelines protocol or an explanation of the clinical judgment  will be provided without charge upon request.*"

It was only after the Defendants conspired together to wrongfully and willfully withhold the Plan assets from the Plaintiffs that the Defendants manufactured this invalid denial of benefits in breach of the Defendants' fiduciary duties under the ERISA Claims Procedure.

38.     On or about February 3, 2014,  the Plaintiffs received an EOB  that again denied all of the submitted healthcare claims regarding Patient RS.  This time the EOB referenced denial code "269," which means "service not covered for this diagnosis."   When the Plaintiffs asked the Defendants to specify which diagnosis was not covered, the Defendants wholly failed to respond, which is further evidence of the Defendants' bad faith in responding to the Plaintiffs' claims.  It was only after the Defendants conspired together to wrongfully and willfully withhold the Plan assets from the Plaintiffs that the Defendants manufactured this invalid denial of benefits.

39.     Last, on or about March 4, 2014, the Plaintiffs received an EOB that again denied all of the submitted healthcare claims regarding Patient RS.  The EOB again claimed "no medical necessity" as the basis for its denial.

40.     As ERISA fiduciaries, the Defendants *must discharge its duties with respect to the Plan "solely in the interest of the participants and beneficiaries," and "for the exclusive purpose of, . . . providing benefits to the participants and their beneficiaries."* 29 U.S.C. § 1104(a)(1).  See also, *Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452, 480 (7th Cir.

2010)("Kenseth I").   This means that the Defendants must, among other things, ensure that the Plan is administered and governed "in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent" with ERISA.   29 U.S.C. § 1104(a)(1).   By wrongfully denying the Plaintiffs' submitted healthcare claim in the sum of **$2,113,995.15** and thereby imposing this massive liability of the unpaid medical bill on Patient RS, the Defendants have woefully violated their obligations to the Plan and Plan Beneficiaries in breach of their fiduciary duties.

41.     The Defendants knew or should have known that the Plan does not permit it or the Defendants to wrongfully deny valid healthcare claims that have been precertified and are medically necessary.

### iii.     *Plaintiffs and Patient RS Detrimentally Relied upon Defendants' Representation of Precertification*

42.     On or about August 19, 2013, the Defendants told the Plaintiffs that Patient RS' benefits under the Plan were verified; that the projected medical treatment was deemed medically necessary; and that Plaintiffs' services were precertified. Since this date, the Defendants have failed and/or refused to disclose the governing Plan with the purported exclusionary language as required under the ERISA statute and applicable law.  Plaintiffs have requested the governing Plan(s) and related documents on approximately five (5) occasions, and the Defendants have continued to refuse to produce said documents in contravention of its disclosure duty under ERISA.  Even if the purported exclusionary language did, in fact, exist at the time of precertification, the Defendants were obligated to affirmatively disclose said exclusionary language to the Plaintiffs at that time.  The Defendant knew or should have known that the Plaintiffs were relying on the Defendants' representations as to verification of coverage;

verification of "no exclusions"; and verification of medical necessity.  The Defendants knew that Plaintiffs had a duly executed Assignment of Benefits, which entitled the Plaintiffs' to recover its healthcare claim under the Plan.  In light of the fact that the Defendants' precertified Patient to remain at Plaintiff VMCL's facility for fourteen (14) days, Defendants knew or should have known that the healthcare claim would be significant.  Plaintiffs detrimental relied upon the representation from Defendants of precertification and the representation that Plaintiffs would be compensated for its healthcare claim under the Plan when submitted.  Plaintiffs' detrimentally relied upon Defendants' omission to disclose the exclusionary language, which is so critical to determining benefits under the Plan, in breach of Defendants' fiduciary duties.  These acts and omissions of the Defendants constitute negligently false representations for coverage under the Plan and for medical-necessity determination.  Plaintiffs have been directly and proximately injured as a result of their reliance on Defendants' negligently false representations in the sum of at least $2,113,995.15.  If the Plaintiffs had known that the Defendants' representations were false, Plaintiffs would not have agreed to provide the services to Patient RS, and Plaintiffs would not have lost revenues of $2,113,995.15.  The loss of this large account receivable by the Plaintiffs, in part, has led to the Plaintiffs filing for bankruptcy.  To date, the Plaintiffs have received no partial payment on this account from the Defendants, nor Patient RS.

   *iv.*   ***Defendants Violated the Minimum ERISA Requirements for a Full and Final Review***

43.    Defendants have also breached their fiduciary duty to comply with the minimum requirements for a "full and fair review" of claims under ERISA and the regulations promulgated thereunder.  Clearly denying the Plaintiffs' healthcare claims in the sum of **$2,113,995.15** constitutes an "adverse benefit determination" under ERISA.  To satisfy the ERISA, regulatory

requirements, and Texas state law for conducting a "full and fair review," the Defendants must provide an independent medical review by a Utilization Review Agency (hereinafter, "URA") that is licensed by the Texas Department of Insurance. Pursuant to 29 C.F.R. § 2560, 503-1(h)(3)(ii), the medical review cannot afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, "nor the subordinate of such individual." In addition, in the event that the adverse benefit determination is based in whole or in part on a medical judgment, including whether a particular treatment or item is experimental or investigational, or not medically necessary, the healthcare professional engaged for said medical review cannot be an individual who was consulted for the initial adverse benefit determination, nor the subordinate of any such individual. 29 C.F.R. § 2560, 503-1(h)(3)(iii)-(v).

44.     The Defendants breached their fiduciary duty by conspiring together to manufacture a false medical review for the sole purpose of denying the large healthcare claims of Defendants. To illustrate, the Plan Administrators, HealthSmart, and its affiliate, HSCMS, are clearly collaborating on whether to precertify and whether to pay healthcare claims. First, the Defendants had HSCMS inform the Plaintiffs on August 19, 2013, that Patient RS was eligible for benefits under the Plan and that there were no applicable exclusions. Plaintiffs received written authorization to provide the proposed healthcare services to Patient RS. After providing the services, the Defendants asked their co-fiduciary, HSCMS, to conduct a utilization review for negative medical necessity. HealthSmart's affiliate, or agent, HSCMS, asked its subordinate, AllMed Healthcare Management, Inc. (hereinafter, "Allmed") to analyze the operative reports to determine medical necessity. In violation of Texas law, Allmed is not a URA licensed by the

Texas Department of Insurance, which fact has been admitted in writing by the Plan Sponsor's attorney.   Allmed did not perform a valid, independent medical review as required by  ERISA and the regulatory law promulgated thereunder. 29 C.F.R. § 2560, 503-1(h)(3)(iii)-(v). Therefore, the medical review issued by Allmed is invalid, illegal, and must be disregarded.  The blatant refusal of the Defendants to provide a full and fair review of the Plaintiffs' adverse benefit determination is an egregious breach of their fiduciary duties.

     *v.*      ***Defendants' Deliberate Failure to Produce Plan Documents and to Conceal Plan Documents***

     45.     Pursuant to the disclosure requirements dictated by ERISA as set forth in 29 U.S.C. § 1166 and 29 U.S.C. § 1132(c) , within thirty (30) days after receipt of a request for governing documents of the Plan or any documents relating to a beneficiary's benefits, claims, or denial of benefits, the Plan Administrator is mandated to provide said documents to the beneficiary.  The Plan Administrator has no discretion to deny the disclosure of said documents. In fact, the court in *Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452, 466 (7th Cir. 2010)("Kenseth I"), expanded the interpretation of this obligation of disclosure when it held that the duty to disclose material information to beneficiaries encompasses both an obligation "not to mislead the participant of an ERISA plan, and also *an affirmative obligation to communicate material facts affecting the interests of plan participants.*  Hence, even if a beneficiary does not ask about material information affecting his benefits, the Plan Administrator has a fiduciary duty to affirmative disclose the information without being asked for it.

     46.     The Defendants have flagrantly violated these disclosure mandates.  First, when Plaintiffs obtained precertification of coverage for Patient RS on or about August 19, 2013 from the Defendants, the Defendants specifically affirmed to Plaintiffs' representative on the

telephone that there were "exclusions" to coverage.   Approximately nineteen (19) months thereafter pursuant to a letter dated March 11, 2016, Defendants for the first time informed the Plaintiffs that they received the adverse claim determination based on an exclusion for (i) experimental or investigational treatment; and (ii) Plaintiff VMCL's status as a non-Medicare provider.  Instead of providing a true, correct, and complete copy of the Master Plan containing these alleged exclusions, the Defendants instead attached several pages of written exclusions referring to a "Plan," without any reference to the Plan the subject of this litigation.   The Defendants are clearly acting in bad faith and have violated both the notice requirements mandated by ERISA and the affirmative disclosure requirement set forth in the decision of the *Kenseth* court.  This is further evidence of the Defendants' breach of its fiduciary duties.

47.    In addition, on or about December 15, 2015, the Plaintiffs requested the governing plan documents from the Defendants.   However, Defendants knowingly, willfully refused to produce the Master Plan within thirty (30) days after the date of its receipt of Plaintiffs' request, which governing document is critical to Plaintiffs' claims.   In fact, the Defendants refused to produce any documents purported to be the Master Plan until June 16, 2016.  On said date, the Plaintiffs received an unsigned, undated, and unwitnessed document purporting to be the Master Plan.  According to the Defendants, there existed an original Master Plan and an Amended and Restated Master Plan, which allegedly went into effect on February 1, 2013.  Plaintiffs requested a copy of each version of the Master Plan. After the Plaintiffs again requested a true, correct, and duly executed copy of both versions of the Plan,  the attorney for the Plan Sponsor, Roberto L. Rodriguez, produced an undated Master Plan without any witness signatures.  The title of this Master Plan did not state "Amended and Restated."  Outrageously, Mr. Rodriguez informed the Plaintiffs in writing of his refusal to produce the version of the

Master Plan that was in effect prior to February 1, 2013. Defendants have no discretion in disclosing the plan documents. The Defendants' blatant disregard for complying with the ERISA mandates is proof of their bad faith and continuous breach of their fiduciary duties.

48.    Plaintiffs contend that the Defendants are deliberately concealing the original Master Plan, which is likely the controlling Plan that contained no exclusions to justify issuing its adverse benefit determination against the Plaintiffs. Concealing or misstating officially mandated information is a common practice for the Defendants. To illustrate:

a.    Defendants' Form 5500 for 2013 states that the name of the Plan is "*Kickapoo Tribe Commercial Defined Benefit Pension Plan*" in contrast the name of the Plan on the allegedly amended and restated Master Plan tendered by Defendants to Plaintiffs  on June 21, 2016, which states the name of the Master Plan is "*Kickapoo Traditional Tribe of Texas Group Health Plan.*"

b.    Even though Defendant's Form 5500 is for the period ending 9/30/14, it was not signed by the alleged Plan Administrator until July 15, 2015.

c.    The copy of the Master Plan that Defendants produced on June 21, 2016, states the effective date is February 1, 2013. However, the Defendants told their auditor, Moss Adams, LLP, that the Master Plan did not commence until October 1, 2013, which date would be subsequent to the date that Plaintiff VMCL provided its services to Patient RS.

49.    Defendants' continuous breach of its disclosure requirements under ERISA and the regulations promulgated thereunder constitutes a breach of its fiduciary duty for each separate failure.

*vi.*    **Appeals by the Plaintiffs**

50.    Plaintiffs have notified the Defendants of their many violations of the ERISA statue and the statutory and regulatory law promulgated thereunder with multiple appeal letters with follow up over an approximate two (2) year period, all to no avail. In addition, the Plaintiffs filed a complaint against the Defendants with the Texas Department of Insurance on or

about January 21, 2016, and a complaint with the Department of Labor on March 29, 2016. Plaintiffs have spoken with the Plan Sponsor(s), the attorney for Healthsmart and HSCHS, and the tribal administrator; all to no avail.

51.     The Defendants knew or should have known that the legal and financial conflict of interest caused by the self-dealing by and among the Defendants was a violation of their fiduciary duties under ERISA and the Plan. Nonetheless, the Defendants continued to conspire together to deny healthcare benefits to the Plaintiffs and to fail to administer the Plan Assets in the best interest of the Plan Beneficiaries. Defendants have continued to collude together to deny valid healthcare claims all to the damage of the Plaintiffs.

52.     The Plaintiffs' three administrative appeals set forth above resulted in very few documents from the Defendants as discussed above. Therefore, the Plaintiffs have completely and unequivocally exhausted any and all required administrative remedies and good-faith appeals. Any further communications or efforts by the Plaintiffs with the Defendants would be futile

### vii.     *Plaintiffs are the Authorized Representatives-Claimants of Patient RS*

53.     As referenced above on September 13, 2013, Patient RS duly executed a valid, irrevocable Assignment of Benefits and claims to the Plaintiffs, which was promptly provided to the Defendants. Pursuant to ERISA, the Patient Protection and Affordable Care Act, and 29 C.F.R. § 2560.503-1(b)(4), a Plan shall not "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." Therefore, the Plan is estopped from attempting to assert any anti-assignment provision in an attempt to bar Plaintiffs from recovering its claims under the Plan.

54. The Defendants have had the opportunity to challenge the validity of the Plaintiffs' Assignment of Benefits, which was promptly tendered to the Defendants. However, the Defendants have wholly failed to challenge the scope and validity of the Assignment of Benefits. Therefore, the Defendants have basically waived their right to challenge the validity and scope of the Assignment of Benefits throughout the administrative-appeal process.

55. At no time during the dealings between the parties did the Defendants ever claim that an anti-assignment provision was the cause for any adverse benefit determination. By reason of the Defendants' continuing course of conduct in not asserting or relying on any anti-assignment provision, the Defendants have waived any arguable right to argue, assert, or rely upon any anti-assignment provision in the Plan.

56. The Plan purports to provide OON benefits to its beneficiaries. The Plan promises its beneficiaries the freedom to receive and obtain reimbursement for healthcare services from his or her provider of choice, including services obtained from OON providers, such as Plaintiff VMCL. Under the terms of the Plan, the Plan must promptly pay benefits for OON services based upon the usual, customary, and reasonable rate ("UCR") for that service in the same geographic area.

## V. COUNTS AGAINST THE DEFENDANTS

57. The Plaintiffs, as statutorily defined Claimants with valid and unchallenged Assignments, are entitled to the ERISA right "to bring a civil action under section 502(a) of the Act following an adverse benefit determination for review" after the Plaintiffs have legally and administratively exhausted any and all appeal remedies. Therefore, the Plaintiffs are entitled to pursue its benefit claims: (i) to recover benefits due to Plaintiffs under the terms of the Plan and

to enforce Plaintiffs' rights under the terms of the Plan; and to recover the relief against the Defendants for the Defendants' failure to supply requested information.  29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(c)(1).

## VI. COUNT ONE:

### Claims under ERISA § 502(a)(1)(b) and 29 U.S.C. § 1132(a)

58.     Plaintiffs incorporate and reallege the allegations set forth above.

59.     Plaintiffs are statutorily defined Claimants with valid and unchallenged Assignment of Benefits from Patient RS, who is a beneficiary under the Plan. ERISA Claimants are entitled to ERISA rights to bring a civil action under 502(a) of the Act following an adverse benefit determination on review.  It is undisputed and unchallenged by Defendants that the Plaintiffs have exhausted the administrative appeal remedies.  Plaintiffs are hereby seeking judgment for the sum of **$2,113,995.15** in payment of the valid healthcare claims submitted by the Plaintiffs relating to Patient RS.  Payment of this healthcare claim was required under the Plan and was fraudulently denied by the Defendants.  Plaintiffs were harmed or injured in the sum of **$2,113,995.15** and are entitled to recover the benefits due to Plaintiffs relating to Patient RS pursuant to the terms of the Plan and the applicable law, including, but not limited to ERISA § 502(a)(1)(B) and 29 U.S.C. § 1132(a).

## VII. COUNT TWO:

### Breach of Fiduciary Duty and Co-Fiduciary Liability under 29 U.S.C. § 1104, 29 U.S.C. § 1105, and 29 U.S.C. § 1106(b)(1)(d)

60.     Plaintiffs incorporate and reallege the allegations set forth above.

61.     Pursuant to 29 U.S.C. § 1104, Defendants as plan fiduciaries owe the Plaintiffs fiduciary duties to discharge their duties in the best interest of the beneficiaries, Patient RS, by

safeguarding the Plan Assets and by responsibly selecting the Plan Administrators and the third party administrator as co-fiduciaries pursuant to 29 U.S.C. § 1105.

62.     Defendants knew or should have known that ERISA that the self-dealing and conflicts of interests by and among the Defendants and their co-fiduciaries constituted prohibited conduct under 29 U.S.C. § 1106 and violated the Defendants' fiduciary duties.  The Defendants knew or should have known that the acts and omissions of the Defendants as alleged hereinabove are adverse to the interest of the Plan and/or the interests of the Plan's participants or beneficiaries.  Clearly conspiring to deny the Plaintiffs' valid healthcare claims relating to the Patient RS constitutes action that is adverse to the Plaintiffs.  In addition, since Patient RS is wholly responsible for the entire amount of the healthcare claim not paid by the Defendants to the Plaintiffs, the Defendants' conduct is adverse to the interest of Patient RS.

63.     As evidenced above, as a direct result of Defendants' breach of fiduciary duties under the statutes, "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary."   See *Cigna v. Amara,* 131 S. Ct. 1866 (2013). **ALTERNATIVELY,** Plaintiff is seeking a surcharge remedy to obtain equitable relief for violations of 29 U.S.C. § 1104, 29 U.S.C. § 1105, and 29 U.S.C. § 1106(b)(1)(d), as evidenced on the administrative records, which has shown that the violation of the fiduciary duty upon that fiduciary and the actual harm was directly and legally caused by the Defendants' violations.

## VIII.  COUNT THREE:

### *Failure to Provide Full and Fair Review under 29 U.S.C. § 1133*

64.     Plaintiffs incorporate and reallege the allegations set forth above.

65.     Although the Defendants were obligated to provide on their own and by and through their agents and co-fiduciaries to provide the Plaintiffs with a "full and fair review" on

Patient RS, the Defendants wholly failed and refused to do so.  Likewise, the Defendants wholly failed and refused to make the necessary disclosures pursuant to 29 U.S.C. § 1133 and the regulations promulgated under ERISA.  The Plaintiffs requested appeals at least three (3) times for Patient RS' claims and exhausted all of its administrative remedies under the Plan before initiating this litigation.

66.    Defendants' misconduct recited above was the direct and proximate cause of the Plaintiffs' harm or injury.

## IX.  COUNTER FOUR:

### *Failure to Provide Requested and Required Documentation under 29 U.S.C. § 1132(c)(1)(B)*

67.    Plaintiffs incorporate and reallege the allegations set forth above.

68.    Defendants have wholly failed to produce the following requested documents as required under 29 U.S.C. § 1132(c)(1)(B) upon request by the Plaintiffs:  a complete, accurate, and duly executed master governing plan document, a complete and accurate SPD, the complete administrative claim file, and all documents showing the actual basis for the adverse benefit determination and methodology  used in applying that basis in making that determination.  Plaintiffs have made multiple requests of the Defendants to produce these documents.  The Defendants knowingly and intentionally failed and refused to provide them in violation of the disclosure requirements under ERISA, thereby causing harm and prejudice to Plaintiffs.  Specifically, the Defendants' failure and refusal to disclose a true, correct, and complete copy of the original Master Plan and the Amended and Restated Master Plan was intentional, willful, and committed in bad faith to deceive the Plaintiffs about their right to benefits under the Plan.

69.    Defendants' failure to comply with the Plaintiffs' requests for information pursuant to 29 U.S.C. § 1132(c)(1)(B) results in a civil penalty/sanction  in an amount up to $110.00 per day from the date of such failure or refusal.  Plaintiffs here entitled to recover this civil penalty/sanction against the Defendants.  In light of the Defendants' flagrant and prolonged refusal to provide the required documents to Plaintiffs, and in light of the Defendants' attempt to conceal the terms of the Master Plan in effect prior to the alleged Amended and Restated Master Plan, Plaintiffs contend that Defendants should be assessed the maximum civil penalty/sanction as provided by the statute.   On December 15, 2015, the Plaintiffs made demand of the Defendants to produce the original Master Plan, the Amended and Restated Master Plan, a complete and accurate SPD, the complete administrative file, and all documents showing the actual basis for the adverse benefit determination and methodology used in applying that basis in making said determination (a total of 5 documents/category of documents).  The statute provides that as to any single participant, each violation described in subparagraph (B) of 29 U.S.C. § 1132(c)(1) shall be "treated as a separate violation."  From the date that the requested documents became due from the Defendants through the date of the filing of this Complaint, it has been 174 days.   Plaintiffs seek recovery of a civil penalty/sanction against the Defendants in the sum of 175  X  5  X  $110.00  =  $96,250.00.    Plaintiffs  further  seek  an  award  of  future  civil penalty/sanction against the Defendants until the date that the Defendants finally comply with their mandated ERISA disclosures.

## X.  COUNT FIVE:

## Injunctive Relief to Remove LUCIO GARCIA-ZUAZUA as Plan Administrator to the Plan

70.    Defendant, LUCIO GARCIA-ZUAZUA, committed fiduciary breaches with actual knowledge, malice, and intent even after repeated notices from the Plaintiffs by recklessly

disregarding his fiduciary duties encompassed under federal and state regulations. Defendant, MR. GARCIA-ZUAZUA,   is continuously and irrevocably harming and injuring Plan Beneficiaries with no intention of stopping.   Plaintiffs are seeking injunctive relief or a declaratory order to remove Defendant, MR. GARCIA-ZUAZUA, as a fiduciary and administrator to the Plan **permanently,** and to prevent Defendant, MR. GARCIA-ZUAZUA, from ever being a fiduciary and administrator to **any ERISA governed plans** in the future.

### XI.  COUNT SIX:

### Injunctive Relief to Remove ROBERTO L. RODRIGUEZ as Plan Administrator to the Plan

71.    Defendant, ROBERTO L. RODRIGUEZ, committed fiduciary breaches with actual knowledge, malice, and intent even after repeated notices from the Plaintiffs by recklessly disregarding his fiduciary duties encompassed under federal and state regulations. Defendant, MR. RODRIGUEZ,  is continuously and irrevocably harming and injuring Plan Beneficiaries with no intention of stopping.   Plaintiffs are seeking injunctive relief or a declaratory order to remove Defendant, MR. RODRIGUEZ, as a fiduciary and administrator to the Plan **permanently,** and to prevent Defendant, MR. RODRIGUEZ, from ever being a fiduciary and administrator to **any ERISA governed plans** in the future.

### XII.  COUNT SEVEN:

### Attorney's Fees and Requested Relief

72.    Plaintiffs have presented claims to Defendants demanding payment for the value of the services described above.  More than 30 days have passed since those demands were made, but Defendant has failed and refused to pay Plaintiffs. As a result of Defendants' failures to pay these claims, Plaintiffs were required to retain legal counsel to institute and prosecute this

action. Plaintiffs are, therefore, entitled to recover reasonable attorney's fees for necessary services rendered in prosecuting this action and any subsequent appeals.

73. Plaintiffs are also entitled to an award of attorney's fees on its ERISA claims. ERISA allows a court, in its discretion, to award a reasonable attorney fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). *See Hardt v. Reliance Std. Life Insurance Co.,* 130 S.Ct. 2149, 2152 (2010).

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that this Honorable Court issue judgment against the Defendants granting the Plaintiffs the following relief:

1. Plaintiffs' actual damages in a sum of at least $2,113,995.15;

2. Statutory penalties and surcharges as permitted by law and as plead for herein;

3. Attorney's fees including attorney's fees in the event of an appeal of this lawsuit;

4. Prejudgment and post-judgment interest at the highest rates permitted by law;

5. An injunction and/or other equitable relief as appropriate to arrest, correct, and prevent acts and omissions by Defendants that violate the Plan and/or ERISA, including, but not limited to, removal of LUCIO GARCIA-ZUAZUA and ROBERTO L. RODRIGUEZ as a plan fiduciary;

6. Plaintiffs' costs of court; and

7. All other relief, legal and equitable, to which the Plaintiffs may be justly entitled.

Respectfully submitted,

by:     */s/ Jordin Nolan Kruse*
        *Jordin Nolan Kruse*
        State Bar No. 24003819
        Federal Bar No. 370457
        16826 Titan Drive
        Houston, TX  77058
        Telephone:  (281) 480-4950
        Fax:  (281) 480-1190
        **ATTORNEY FOR PLAINTIFFS,**
        **VICTORY PARENT COMPANY, LLC   AND**
        **VICTORY MEDICAL CENTER LANDMARK, LP**